I will now hear our argument on our next case, which is the United States v. Trump. Mr. Chamberlain, Mr. Abrams. Thank you, your honors, and may it please the court, I'm Elliott Abrams with the law Chamberlain. I would like to make two points today. The first point is that the plain language of 21 U.S.C. 853E1 prohibits the government from getting a restraining order to seize untainted assets before trial. The second point is that Billman is no longer controlling law because last year the Supreme Court specifically repudiated the reasoning on which Billman and its progeny, that is primarily Boland, relied. So turning to the first points, your honors, the question on the merits we submit is straightforward. It's a plain language issue. We look at 21 U.S.C. 853A. 21 U.S.C. 853A prohibits the government from seizing untainted assets, that is, the proceeds of crime and the instrumentalities of crime and property traceable to those types of assets. 21 U.S.C. 853E1, which is the restraining order provision. So why would you say that Billman didn't already answer that question? Your honor, Billman did answer that question. So that's the second point I'd like to make today is that Billman is no longer controlling. And the standard It's like that would be your first point, because if Billman's controlling it doesn't matter what you may think about the language of the statute. That's correct, your honor. So I'll go to the controlling issue and address that. This court can reach the merits question. And the reason is because Billman and the reasoning of Billman has been specifically repudiated by the Supreme Court in Louise. The standard for when one panel can re-evaluate the opinion of a prior panel Let's get to the chase of this case here. Yes, your honor. You got the Louise case and you're talking about untainted assets. It's pretty clear if you're using those assets for counsel, you implicate the Sixth Amendment rights and therefore you're entitled to have them. Billman, at least beyond that, seems to have a lot of dicta in there, a lot of other opinions, the whole bit. That's probably the only clear and direct holding of it. To reach the abrogation of Billman, we're going to have to say they didn't just mean it in that limited context, but they meant it in a broader sense that you just can't get to it. I suppose that's why you want to go back to the statute because every other circuit out there has agreed with you. Everybody else has agreed with you, but we're just a pre-judge panel. And if we got an opinion that's out there, we can disagree with it, but we don't. We don't have the authority to overturn it or to abrogate it because we just think it's bad. So how do we address that? The way to address that, Your Honor, is to look at the standards set out in Etheridge, which we discuss at page 3 of our reply brief. In Etheridge, what the Court said is when a Supreme Court decision has, quote, specifically repudiated the reasoning upon which this Court based its prior decision, the prior decision is no longer controlling. What was the breakdown of that decision, in Louise's case? How did the judges vote on it, the justices? In Louise, Your Honor, there was four justices voting for a plurality, which goes through and distinguishes Monsanto and specifically repudiates the reasoning on which Billman relied, saying Monsanto does not apply to situations where we're talking about pretrial seizures of untainted assets. It only applies to situations where we're talking about pretrial seizures. Well, that might be a little bit of a broad reading for that. I mean, Justice Breyer writing for the plurality said that the question in this case dealt with the pretrial restraint of untainted assets, as Judge Wynn indicated, needed to retain counsel of choice with regard to the Sixth Amendment. Now, they did have a discussion about tainted and untainted assets in Drysdale and Monsanto, but there would have been no reason for the plurality to have then gone into the balancing test with regard to the Sixth Amendment if they were making a rule on tainted and untainted assets. If they would have agreed with Justice Thomas, then Justice Thomas would have been the majority opinion of the Court and the plurality would not have needed to write. That's correct, Your Honor. However, if this case were before Justice Breyer, the balancing test would also be unnecessary. Justice Breyer says... Justice Thomas says it. I mean, if you go with his opinion, it looks like to me it was before then, and they could have just said, we agree. Justice Thomas' opinion... It's almost... He makes a very good case for you, but in doing so, what he's done is he's basically pointed out something that's glaring, and yet the Court doesn't buy into it, or at least they don't embrace it, and they could have. They could have on a constitutional ground, Your Honor. In this case, what we're dealing with is 853, and Justice Breyer spends page after page talking about the statutory analysis of 853, and so I'd like to point this Court to a quote from Justice Breyer's opinion where he says, Monsanto does not, quote, stand for the proposition that property, whether tainted or untainted, is subject to pretrial restraint so long as the property might someday be subject to forfeiture. He continued, this reading asks too much of our precedent. So what he's done there is said, Monsanto does not mean that you can seize substitute assets pretrial, and that holding or that discussion was necessary because when the United States walked into the Supreme Court, they said Monsanto controls, and when the dissent wrote, both dissenting opinions say Monsanto controls this question, and Justice Breyer says no. Monsanto was based on 853, and therefore Monsanto... Based on tainted assets as opposed to untainted assets, but Justice Breyer also goes into some detail in describing circumstances that could apply that would enable the government to have a pretrial restraint. He compares it to a reversionary interest or a contingent future executory interest, and gives those as examples, but doesn't really answer the pipeline rule here for all the reasons that Judge Wynn's already described for you. Yes, Your Honor, and if we were making a constitutional argument that Congress cannot authorize pretrial restraint of untainted assets, we could not rely on Justice Breyer's opinion, because clearly he said the Constitution is limited to what you need, the Sixth Amendment is limited to what you need to hire counsel. But he says that, I have another quotation from Justice Breyer, and one reason I think that this is not settled by Justice Breyer is because the United States walked in and disavowed the reading of 853 that the government in this case is putting forth. And so the justices weren't asked to answer this question. They assumed that 853 did not authorize pretrial restraint of untainted assets. So they didn't have to go and specifically say it, but if we read Justice Breyer's opinion, for example, towards the very end there's a discussion that says Congress, under the government's reading, Congress could authorize or pass new laws that authorize pretrial restraint of substitute assets that seize property in cases involving a number of different offenses, and then it cites 1963M as one of the statutes that Congress could change in order to authorize the pretrial restraint of substitute assets. And that is the very statute that Billman addresses. So Justice Breyer is assuming and the plurality is assuming that 853 and 1963 do not authorize the pretrial restraint of substitute assets. So what we have is they've taken that as an assumption. I wish that they hadn't because they would have more clearly specified it. But when they're saying things like Congress could change a law to allow pretrial restraint of substitute assets and using as an example of a law that could be changed and citing the very statute that Billman relied on, that is a plurality of the United States Supreme Court saying Congress has not done it. We are adopting the rule that every other circuit has, and we are not adopting the rule that is the rule now in the Fourth Circuit. You are making a very strong argument, and I think given just the massive support for your position by the other circuits and the Supreme Court's opinion, which seems to assume that that's the way it would go, that it's abrogated. But in fact, I think when you come to the Supreme Court, you have to be the law of the Supreme Court because it wasn't essential to the holding of the Supreme Court. And when you look at the plurality of opinion that Briar, Judge Agee has alluded to, it's very difficult to get there. And yet at the end of the day, it looks to me, if we were talking about the Supreme Court, it sounds like to me you're right. I'm just troubled as to what do we do with Billman, and you can see the struggle that's happening here on the court. And I understand that you're rightly dealing with that, but that's the key here. Is it, is that still precedent in this circuit? And if it is, then how does a three-judge panel overrule it? Your Honor, a three-judge panel cannot overrule it if Billman is still controlling. But Billman, the test whether a prior panel is still controlling is set out in Etheridge. And Etheridge provides a wonderful example that can be applied directly to this case. In Etheridge, the question was is a brake person who's operating a train car, the train car is ultimately going to go and be turned over and dumped into a ship. And the question is, is this brake person a maritime employee? A prior four-circuit panel had said no, this person is not a maritime employee. And they relied on a Supreme Court case and a reading of a Supreme Court case from which they drew a rule that says basically if this type of conduct would occur, if there was no ship, if it was just a railroad, then it's a railroad employee, not a maritime employee. And they said whether, the question is based on, they took a Supreme Court case and drew a rule that said is this a traditional railroad function or is it a traditional long shoreman function? And so they had a Supreme Court case and they drew a rule from that case. The Supreme Court. Let me, let me, let me interrupt you. Is it not clear to you as you stand there trying to make the example and draw it out that that exactly is part of the problem? You're making a strong argument, but the fact you are making the argument in a way that is maybe good, but it's just not over-the-top compelling, that is the issue we're looking at. It seems to me you're getting very good questions, very good questions, and you're answering them as best you can, and I'm sure you think forcefully, but they aren't direct, clear, compelling answers, which I think we may all think we need to have under whatever standard we apply. Because you think the case you point to, that just sets out the principle that we can, but it doesn't tell us exactly when we do it. Correct? That's correct, Your Honor, and I, what I would follow up with is to say in that particular case in Etheridge, the court, the panel, the second panel relied on dicta in order to say But that doesn't mean, that doesn't mean we have to or even that we should. That's not the precedent of that case that you rely on dicta, but that you may revisit it, look at the law, and decide what's appropriate, that panel thinks. That decision process isn't precedent on us, is it? That it's, the standard is precedent. Not that you, not that you, you have to meet the standard, but that case doesn't stand for the fact that dicta alone is enough to do it. I think it shows. That's what they, that's how they, that's how they applied their rule in that case, but that doesn't stand for the proposition that in the Fourth Circuit, dicta alone in a case is enough to overrule a Fourth Circuit case. Correct? I beg to differ on that, Your Honor, because in that case they did rely on dicta to overrule. No, but that's an application of their standard. You don't think that case says if there's dicta anywhere, dicta in itself is enough to overrule a question of Fourth Circuit precedent. You don't think that's the teaching of that case, do you? No, Your Honor. It may suffice, but not that it necessarily suffices. I think it, when dicta specifically repudiates the reasoning on which the prior panel relied, that's the holding of Etheridge and the application in Etheridge, which is where the standard comes from and has been applied as recently as 2011 in Lux v. Judd, in the same way where we have a Supreme Court case that when you read it. That is because, but that is because the panel that heard that case applied the general principle that if the case, if our precedent is so eroded, that you could then no longer be bound by the precedent. But I don't think any case in the Fourth Circuit says dicta in and of itself is enough to override precedent. There's no case that says that. That you have to do it. That you have to use dicta. Or that dicta alone has to be sufficient. There's no Fourth Circuit law on that. I agree, Your Honor, but it allows this Court to revisit the Billman decision. And what we have, and this is, there's one way to look at it and say it's dicta. We've argued in our brief that both the four-member plurality and Justice Thomas both reject the reading of Monsanto that has been applied by Billman. And so you have five justices, a majority of the Supreme Court, who say Monsanto does not stand for what the Fourth Circuit says it stood for. And so you have a majority of the Supreme Court specifically repudiating the reasoning of Billman. Is that dicta? Your Honor, I do not believe so. But, you know, I think it's not dicta. And I'll explain why briefly. Because You think it was necessary to their determination? Yes. Because it was necessary to distinguish the arguments that the dissent adopted. The dissent says Monsanto controls. The majority says Monsanto does not control. It explains why Monsanto does not control and, therefore, reaches a different rule than the dissent or a different outcome. But in what context of the Sixth Amendment question? Yes, Your Honor. But it was first necessary to distinguish Monsanto. And without distinguishing Monsanto, the dissent would have won. The dissent says Monsanto controls. The majority says Monsanto doesn't control. Therefore, we can reach a different result. And so I'm reaching the end of my time. So, if I may, reserve the remainder for rebuttal. Thank you, Mr. Abrams. Mr. West? Beliefs of the Court. I'm Stephen West, representing the United States in this matter. For nearly 27 years, this Court has held that the pretrial restraint of substituted assets is authorized by statute. And that goes back to Billman. And you maintain we should maintain that, under the precedent that exists, notwithstanding that nearly everybody, it sounds like to me, everybody else, goes a different direction. I do, Your Honor. We're the only circuit that does this. I do maintain that, Your Honor, because three panels of this Court There is some language in Louise that, at the very least, it seems to suggest, if not Well, I don't know that it does suggest that you're wrong. I think there are three panels of this Court that have found that that to be the case. Eight different justices of the Court. Why do you need to go there if you can argue that the co-holding of Louise is not, does not abrogate our decision here? Well, that's correct. I mean, even if you, I mean, you could, we could go around and around as to whether or not it does or does not. But all, isn't all you need to say is that, Louise, really, the argument may be strong suggestions, or it may even look like you could forecast, it just did not do it? That's correct, Your Honor. It deals only with the restraining, restraint in the context of a Sixth Amendment claim. And if you made that argument strong enough, what else do you need to say? There is nothing more to say. That is the argument of the government. I don't want to foreclose your argument, but I mean, because I have other judges on the panel, but I mean, I'm just trying to figure that one out. The only reason I mention the other circuits is because you mentioned the other circuits, and no, those other circuits don't really matter. If, in fact, the precedent is there in this Court, and it is, all these different panels, we follow, this Court needs to follow that precedent. And Louise doesn't change that. As I've said, it operates only in the Sixth Amendment context. That's the only place. And it doesn't say anything about, you know, what 853 means, Section 853 means. It doesn't say anything about what happens here. The interest here is not a Sixth Amendment constitutional interest. In fact, it's not even known what the record doesn't indicate what the defendant needs the funds for, or if the defendant needs the funds at all. So we don't have the same kind of interest here at all in this case. We don't have a constitutional interest. And so, you know, Billman still applies. The restraint can operate against substitute assets, except now, under Louise, where there is a constitutional claim, where there is a need to use those funds to secure counsel. And in fact, in Louise itself, it puts a limitation on that. It says, you can only use it for a reasonable attorney's fee. So there's no reason to qualify it by saying a reasonable attorney's fee if, in fact, there is, you know, as the defendant says, a broad statement that restraint of substitute assets is never possible. That is not the holding of Louise. Basically, all your other arguments after that, as Judge Wynn has indicated, are already set, and you just have to bring them back up. Should you get there on bonk or at the Supreme Court? That's correct. That's correct, Your Honor. I don't think I have anything further to say unless the Court has questions. Thank you very much. Thank you very much. Mr. Abrams, you have a little time in rebuttal. Thank you, Your Honors. The straightforward analysis here is that Billman relies on Monsanto and quotes Monsanto as applicable to pretrial restraints of untainted assets. And we have five justices in Louise that say that analysis is wrong. Whether it's a holding, whether it's dicta, is basically immaterial because we have five justices who say Billman over-read Monsanto. And so, once we have that, we have five. It's immaterial because if the core holding does not directly abrogate our decision, nonetheless, as you've got this moral opinion, you sort of toss it together, and you can come up with strong support from where you're coming from, and every other circuit agrees with you. We still have this opinion that's been here, as the Counselor alluded to, for 27 years. And, Your Honor, in Etheridge and in Fowler's panel, as powerful as we can be, we respect our precedents. Absolutely, Your Honor. And one of the precedents of this Court is when the Supreme Court speaks, even in dicta, we listen. And, for example, in McCravey v. Metro, which is 690 F3rd 176, 4th Circuit, 2012. We're typically not going to go against a prior decision unless we do so on bond. We're going to bring our other colleagues in, in that kind of setting, and say, what do you think? Because that's disrespectful to our predecessors who made that decision, and would be disrespectful to the other judges, in some narrow sense. And, again, I think you're making a very strong argument, but it all depends on, I guess, the flavor of this Court in terms of how strong, and Judge Shedd had a nice colloquy with you in terms of the distinctive case that you made, and I think he's absolutely important with it. But I think that just makes it difficult for you to make that argument here, given, you know the 4th Circuit, we respect our colleagues in what they do here a lot. Absolutely, Your Honor. And I would just say that in order to say that Billman has not been repudiated, you also have to look at 4th Circuit precedent and not apply that 4th Circuit precedent. So we're not in a situation where we have to disregard some statement by some panel, and we also would have to disregard the statement from McCravey that, quote, we cannot simply override a legal pronouncement endorsed just last year by a majority of the Supreme Court. And that's what we have. We have a legal pronouncement pronounced just last year, endorsed by a majority of the Supreme Court. That's from the McCravey case. And if this Court says we can't, Billman's still controlling, it's overriding the precedent of McCravey, and it's not applying Etheridge. So we would urge this Court to apply those cases. Thank you very much. Thank you very much. Mr. Abrams and Mr. West, those are very good arguments, and you all may have a ticket to the Supreme Court at some point. We're going to come down and greet counsel, and we're going to take a very brief recess and go on to our last case. We'll take a break. The Honorable Court will take a brief recess.
judges: Dennis W. Shedd, G. Steven Agee, James A. Wynn, Jr.